**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**PLUMBERS, PIPEFITTERS, AND APPRENTICES
LOCAL NO. 112 PENSION FUND,** *et al.***,**

          **Plaintiffs,**

 vs.               No. 3:16-CV-0321
                   (MAD/DEP)

**D.J. SPRINGER, INC., JEANNETTE SPRINGER,**

         **Defendants.**
_____

**APPEARANCES:**          **OF COUNSEL:**

**BLITMAN, KING LAW FIRM**     **JENNIFER A. CLARK, ESQ.**
Franklin Center
443 North Franklin Street - Suite 300
Syracuse, New York 13204-1415
Attorneys for Plaintiffs

**OFFICE OF WALTER G. PRATT**   **WALTER G. PRATT, ESQ.**
510 Higby Road
New Hartford, New York 13413
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  On March 18, 2016, Plaintiffs Plumbers, Pipefitters and Apprentices Local No. 112

Pension Fund ("Pension Fund"); Plumbers, Pipefitters and Apprentices Local No. 112 Annuity

Fund ("Annuity Fund"); Plumbers, Pipefitters and Apprentices Local No. 112 Health Fund

("Health Fund"); Plumbers, Pipefitters and Apprentices Local No. 112 Educational and

Apprenticeship Funds ("Education and Apprenticeship Funds") (collectively, the "Funds");

Plumbers, Pipefitters and Apprentices Local No. 112 and Employers Cooperative Trust

("E.C.T."); and Local Union No. 112 of the United Association of Journeymen and Apprentices

of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union") commenced this action against Defendants D.J. Springer, Inc. ("D.J. Springer" or "Defendant Corporation") and Jeannette Springer ("Defendant Springer") for failing to make contributions and deductions as required by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 1985. Presently before the Court is Plaintiffs' motion for default judgment as to Defendant Corporation and Defendant Springer. *See* Dkt. No. 43. As set forth below, the motion is granted.

## II. BACKGROUND

Defendant Corporation is a New York corporation and Defendant Springer was the officer and controlling shareholder of Defendant Corporation. *See* Dkt. No. 1 at ¶¶ 14-15. Plaintiffs—who are fiduciaries of the Funds and the E.C.T., and the business manager of the Union—allege that Defendant Corporation is party to certain agreements and trusts requiring it to remit contributions and deductions to Plaintiffs, and that Defendant Corporation has failed to do so. *See id.* at ¶¶ 16-18. Plaintiffs further allege that Defendant Springer is liable for Defendant Corporation's failure to pay contributions and deductions to the Funds, the E.C.T., and the Union. *See id.* at 61-71.

On November 15, 2016, Magistrate Judge David E. Peebles directed Defendants to serve responses to Plaintiffs' discovery demands. *See* Dkt. No. 13. On December 22, Magistrate Judge Peebles extended time for Defendants to comply with Plaintiffs' discovery demands but he warned that Defendants' answer would be stricken and that Defendants would be declared in default if they did not comply with discovery orders. *See* Dkt. No. 14. On September 8, 2016, Magistrate Judge Peebles ordered Defendants to provide proper responses to Plaintiffs' discovery

demands and again stated that if Defendants failed to comply, then their answer would be stricken and they would be declared in default. *See* Dkt. No. 27. On October 13, 2017, Defendants moved for another extension of deadlines. *See* Dkt. No. 31.

On December 24, 2017, Magistrate Judge Peebles issued a Report and Recommendation recommending that the Court strike Defendants' answer and enter default against Defendants. *See* Dkt. No. 31 at 13. On March 6, 2018, the Court ordered that Magistrate Judge Peebles' Report and Recommendation be adopted in full. *See* Dkt. No. 41. On March 12, 2018, the Clerk of the Court entered default against Defendants. *See* Dkt. No. 42. Plaintiffs now move for default judgment. *See* Dkt. No. 43.[1]

Defendants filed a response in opposition to Plaintiffs' motion for default judgment requesting the action be dismissed. *See* Dkt. No. 45. In Defendants' response, Defendants argue that they are not parties to the union agreement, that Defendant Springer was not a fiduciary of Defendant Corporation, and that Plaintiffs failed to comply with an arbitration agreement. *See id.* Plaintiffs filed a reply with additional documentation, including remittance reports submitted by Defendant Corporation. *See* Dkt. No. 50-5.

### III. DISCUSSION

---

[1] Plaintiffs' also move to amend the complaint to seek damages in addition to those that were alleged in the complaint. *See* Dkt. No. 43-40 at 8. In general, "plaintiffs may not recover an amount greater than that sought in their . . . complaint." *Bricklayers Ins. & Welfare Fund v. Golden Vale Constr., Inc.*, No. 06-CV1028, 2007 WL 3232244, *7 (E.D.N.Y. Oct. 31, 2007). In this case, however, Plaintiffs may do so because they provided notice in their complaint that they would seek monies "that become due or are determined to be due to Plaintiff funds whether arising before or after commencement of the action." Dkt. No. 1 at ¶ 79; *see also Upstate N.Y. Eng'rs Health Fund v. S. Buffalo Elec., Inc.* No. 15-CV-903, 2017 WL 4466587, *2 (N.D.N.Y. Oct. 6, 2017) ("Plaintiffs need not be limited to the [amount] explicitly requested in the Complaint . . . because the Complaint itself put Defendants on notice of the possibility of a larger damages figure"). Therefore, Plaintiffs may seek additional damages without amending their complaint.

**A. Standard of Review**

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 10-CV-1272, 2012 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "'First, under Rule 55(a), when a party fails "to plead or otherwise defend . . . the clerk must enter the party's default."'" *Id.*; *see also* Fed. R. Civ. P. 55(a). "'Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court.'" *Id.* "'Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment.'" *Id.*; *see also* Fed. R. Civ. P. 55(b)(2).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189-90 (citation omitted). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado*

*Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" *Id.* at 190 (citation omitted).

**B.     D.J. Springer, Inc.**

*1. Liability*

In the present matter, the summons and amended complaint were properly served on Defendant Corporation on March 18, 2016, and the Clerk of the Court entered default against Defendant Corporation on March 12, 2018. *See* Dkt. Nos. 2, 43. Because Defendant Corporation has failed to comply with Magistrate Judge Peebles's orders, the Court sanctioned Defendant Corporation pursuant to Federal Rule of Civil Procedure 37. *See* Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi); Dkt. Nos. 31, 41; *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 452-53 (2d. Cir. 2013) (holding default judgment under Rule 37 was not an abuse of discretion because the court warned petitioner about the possibility of Rule 37 sanctions). Defendants have since requested Plaintiffs' complaint be dismissed because Defendants were not parties to the agreement and Defendant Springer was not a fiduciary of Defendant Corporation. *See* Dkt. No. 45-1 at 2-3, Dkt. No. 45-2 at 2-3. But the Court has found Defendants in default and now grants default judgment against Defendants. Therefore, Defendants have admitted to all well-pleaded factual allegations in Plaintiffs' complaint. *See* Dkt. Nos. 41.

Under ERISA, an employer that is required to make contributions to a multiemployer benefit plan "must make such contributions in accordance with the terms and conditions of such plan or [collectively bargained] agreement." 29 U.S.C. § 1145. Here, Plaintiffs allege that Defendant Corporation is bound by an agreement requiring it to pay fringe benefit contributions to the Funds for each hour worked by certain employees, and to deduct from certain employees'

wages specified amounts to be paid to the Union. *See* Dkt. No. 1 at ¶¶ 21-26. Defendant Corporation failed to make the required contributions and deductions and is therefore liable to Plaintiffs for those unpaid contributions and deductions. *See id.* at ¶¶ 28-30.

### *2. Damages*

ERISA provides for statutory damages as follows:

> (A) the unpaid contributions
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of —
> > (i) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate

29 U.S.C. § 1132(g)(2). Here, Plaintiffs request damages against Defendant Corporation, consisting of unpaid contributions and deductions, interest, liquidated damages, audit fees, and attorneys' fees, for a total of $285,110.08.

#### *a. Unpaid Contributions and Deductions*

Plaintiffs claim that audits and remittance reports from 2013 to 2017 show that Defendant Corporation owed $99,375.67 in unpaid contributions and deductions through May 2017. *See* Dkt. No. 43-7 at 1-6; Dkt. No. 43-8 at 1-6; Dkt. No. 43-9 at 1-6; Dkt. No. 43-11 at 1-6; Dkt. No. 43-13 at 1-6. After reviewing Plaintiffs' motion and supporting documentation, the Court awards Plaintiffs $99,375.67 in unpaid contributions and deductions.

#### *b. Interest*

Plaintiffs seek interest on unpaid contributions and deductions. For the purposes of an action to collect interest on unpaid contributions under ERISA, "interest on unpaid contributions

shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). "Under the LMRA, it is within the court's discretion to award prejudgment interest." *Finkel v. INS Elec. Servs. Inc.*, No. 06-CV-4862, 2008 WL 941482, *7 (E.D.N.Y. Apr. 4, 2008). The Funds' agreements provide for interest at two percent per month. *See* Dkt. No. 43-6 at 6.

Here, Plaintiffs request $72,178.78 in interest on unpaid contributions and deductions for the period of 2013 through 2017. *See* Dkt. No. 43-7 at 1-6; Dkt. No. 43-8 at 1-6; Dkt. No. 43-9 at 1-6; Dkt. No. 43-11 at 1-6. After reviewing Plaintiffs' submissions, the Court awards $72,178.78 in interest.

### *c. Liquidated Damages*

Plaintiffs request liquidated damages on unpaid contributions in the amount of $72,150.04. *See* Dkt. No. 43-7 at 1-6; Dkt. No. 43-8 at 1-6; Dkt. No. 43-9 at 1-6; Dkt. No. 43-11 at 1-6. ERISA provides for liquidated damages in an "amount equal to the greater of--(i) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). After reviewing Plaintiffs' motion and supporting documentation, the Court awards $72,150.04 in liquidated damages.

### *d. Audit Fees*

"Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (quoting *King v. Unique Rigging Corp.*, No. 01-CV-3797, 2006 WL 3335011, *5 (E.D.N.Y. Oct. 27, 2006)). Accordingly, a party requesting audit fees must provide sufficient information to allow a court to determine the

reasonableness of the fees requested. In this case, Plaintiffs request $16,820.40 in audit fees. *See* Dkt. No. 43-1 at 4. To support that request, Plaintiffs provide an affidavit from their auditor and a series of invoices from his auditing firm. *See id.* After reviewing Plaintiffs' motion and supporting documentation, the Court awards $16,280.40 in audit fees.

      *e. Attorneys' Fees*

In an ERISA action involving delinquent contributions, "the court in its discretion may allow a reasonable attorney's fee and costs of action." 29 U.S.C. § 1132(g)(2). "[A] district court must begin its § 1132(g)(2) analysis by determining whether a party has achieved 'some degree of success on the merits,' but it is not required to award fees simply because this pre-condition has been met." *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 500 U.S. 242, 254 (2010)). Here, Plaintiffs have achieved success on the merits, and the Court finds that an award of attorneys' fees is appropriate.

Defendants argue that Plaintiffs should not be awarded attorneys' fees because of Defendants' inability to pay, and cite *Engineers Joint Welfare, Pension, Supplemental Unemployment Ben. & Training Funds v. B.B.L. Constructors, Inc.*, 825 F. Supp. 13, 17 (N.D.N.Y. 1993) in support of their argument. *See* Dkt. No. 45-2 at 3. But in *Engineers Joint Welfare*, the ability of a party to pay is only one of five factors. The other four factors are (1) the offending (losing) party's bad faith or culpability; (2) whether the action was filed to confer a benefit on plan members generally; (3) whether an award of fees would deter others from acting similarly under like circumstances; and (4) the relative merits of the party's position. *Engineers Joint Welfare*, 825 F. Supp. at 18. Looking at all the relevant factors under, the Court would still find the Defendants liable for attorneys' fees because Defendants acted in bad faith and the award would deter others from acting similarly.

8

Plaintiffs request $23,153.75 in attorneys' fees through April 17, 2018. *See* Dkt. No. 43-32 at 10. In support of their request, Plaintiffs have submitted a detailed narrative of legal services showing that 60 attorney hours and 35.1 paralegal hours were spent on this matter. *See id.* at 11. After reviewing the time records, the Court finds that the amount of time spent by Plaintiffs' attorneys was reasonable. However, the Court finds that Plaintiffs' requested hourly rates of $277-$300 for attorneys and $152-$165 for paralegals are too high. *See id.* at 9.

In determining the reasonableness of attorneys' fees rates, the Second Circuit has held that a court is "to bear in mind all of the case-specific variables that [courts] have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," which is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The relevant factors for a court to consider include the complexity and difficulty of the case, the resources required for effective prosecution of the case, the case's timing demands, the attorney's interest in achieving the ends of the litigation, the nature of representation, and the type of work involved in the case. *See id.* at 184 n.2.

In a recent case, this Court found that rates of $240 per hour for an experienced attorney and $95 per hour for paralegals are appropriate in ERISA cases. *See Int'l Bhd. of Elec. Workers Local Union No. 1249 Pension & Ins. Funds by Dafor v. S. Buffalo Elec., Inc.*, No. 15-CV-0682, 2018 WL 1224469 (N.D.N.Y. Mar. 8, 2018). The Court awards the same rates in this case. Therefore, the Court awards Plaintiffs $17,734.50 in attorneys' fees, consisting of $14,400 for attorney work (60 hours) and $3,334.50 for paralegal work (35.1 hours).

**D.     Jeannette Springer**

*1. Liability*

In the present matter, the summons and amended complaint were properly served on Defendant Springer on March 18, 2016, and the Clerk of the Court entered default against her on March 12, 2018. *See* Dkt. Nos. 2, 43. Because Defendant Springer has failed to comply with Magistrate Judge Peebles's orders in this action, the Court sanctioned her pursuant to the Federal Rule of Civil Procedure 37. *See* Dkt. No. 41.

Plaintiffs also allege that Defendant Springer is a fiduciary of Defendant Corporation, and that she is personally liable for Defendant Corporation's unpaid contributions to the Health, Pension, Annuity, and Education Funds. *See* Dkt. No. 43-21 at 10-12. Under ERISA, in order to establish that an individual is personally liable for unpaid contributions as a fiduciary, a plaintiff must show that "(1) the unpaid contributions were plan assets and (2) [the defendant] exercised a level of control over those assets sufficient to make him a fiduciary." *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009).

First, "[w]hile unpaid employer contributions are not ordinarily assets of the plan, the parties to an agreement are free to provide otherwise." *Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg*, No. 08-CV-0884, 2009 WL 3497493, *3 (E.D.N.Y. Oct. 28, 2009). In this case, the trusts and collections policies for the Health, Pension, Annuity, and Education Funds state that withheld contributions constitute plan assets. *See* Dkt. No. 43-22 at 43; Dkt. No. 43-23 at 43; Dkt. No. 43-24 at 52; Dkt. No. 43-25 at 43. Defendant Corporation is bound by those trusts and collections policies. *See id.* Therefore, the unpaid contributions were plan assets. Second, according to Plaintiffs, Defendant Springer ran Defendant Corporation's day-to-day operations and determined whether money would be paid to the funds. *See* Dkt. No. 43-33 at ¶¶ 60-71. Therefore, Plaintiffs have established that Defendant Springer may be held personally liable under ERISA.

### *2. Damages*

"A fiduciary that unlawfully withholds plan assets is 'personally liable to make good to such plan any losses to the plan.'" *Bricklayers & Allied Craftworkers Local 2, Albany N.Y. Pension Fund v. Moulton Masonry & Constr.*, 779 F.3d 182, 188 (2d Cir. 2015) (quoting 29 U.S.C. § 1109(a)). In this case, Plaintiffs seek to recover unpaid contributions, prejudgment interest, audit fees, and attorneys' fees from Defendant Springer. *See* Dkt. No. 43-21 at ¶ 33.

#### *a. Unpaid Contributions*

Plaintiffs claim that Defendant Springer is liable for unpaid contributions owed to the Health, Pension, Annuity, and Education Funds in the amount of $98,071.20. *See id.* Based on the previously stated law, as well as Plaintiffs' motion and supporting documentation, the Court awards Plaintiffs $98,071.20 in unpaid contributions as to Defendant Springer.

#### *b. Interest*

Prejudgment interest may constitute appropriate relief against a fiduciary under 29 U.S.C. § 1109(a). *Moulton Masonry*, 779 F.3d at 190. The decision of whether to grant prejudgment interest is at the discretion of the district court, but the court must "explain and articulate its reasons for any decision regarding prejudgment interest." *Id.* (quoting *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 622-23 (2d Cir. 2006)). "Prejudgment interest is intended to serve 'as compensation for the use of money withheld' and to put 'the plan in the position it would have occupied but for the breach.'" *Upstate N.Y. Eng'rs Health Fund v. Oneidaview Pile Driving, Inc.*, No. 15-CV-512, 2017 WL 1483446, *5 (N.D.N.Y. Apr. 25, 2017) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir. 1992)). "Assessing the appropriate amount of interest requires a comparison of what the plan earned during the time in question and what it

would have earned had the money lost due to the breach been available." *Diduck*, 974 F.2d at 286.

Here, Plaintiffs request $16,130.98 in interest on unpaid contributions to compensate for lost investment income from 2013 through 2018. *See* Dkt. No. 43-21 at ¶ 33. After reviewing Plaintiffs' submissions, the Court finds this sum reasonable in order to make Plaintiffs whole for lost investment income.

### *c. Audit Fees and Attorneys' Fees*

For the reasons stated above, Plaintiffs are entitled to $16,820.40 in audit fees and $17,734.50 in attorneys' fees. Therefore, the Court awards $34,554.90 in audit and attorneys' fees as to Defendant Springer.

**E.    Supplemental Audit**

Plaintiffs argue that Defendants must be compelled to produce their books and records for Plaintiffs' review and audit. "Faced with recalcitrant ERISA defendants, numerous courts have granted an injunction requiring an employer, who both failed to make contributions and cooperate with an audit, to submit to a CBA-required audit covering a specific period of time." *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, *14 (E.D.N.Y. Aug. 30, 2011) (collecting cases). Here, the Funds' collections policies and trust agreements provide that Defendants are required to produce their books and records for Plaintiffs' examination and audit. *See* Dkt. No. 43-21 at ¶ 36; Dkt. No. 43-27 at 4. Plaintiffs claim that Defendant Corporation has refused to produce its records for audit for the period beginning from January 1, 2017 through April 30, 2018. *See* Dkt. No. 43-40 at 27. Accordingly, the Court concludes that Plaintiffs are entitled to examine Defendant Corporation's books and records for that time period.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Clerk of the Court shall enter judgment in the amount of $277,690.65 against D.J. Springer, Inc., consisting of (1) $99,375.67 in unpaid contributions and deductions, (2) $72,150.04 in interest on unpaid contributions, (3) $72,150.04 in liquidated damages, (4) $16,280.40 in audit fees, and (5) $17,734.50 in attorneys' fees; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the amount of $148,217.08 against Jeannette Springer, consisting of (1) $98,071.20 in unpaid contributions, (2) $16,130.98 in interest on unpaid contributions, (3) $16,280.40 in audit fees, and (4) $17,734.50 in attorneys' fees; and the Court further

**ORDERS** that Defendants are required to produce D.J. Springer, Inc.'s books and records for the period from January 1, 2017 to April 30, 2018, for Plaintiffs' review and audit, and that the Court shall retain jurisdiction in this matter until Plaintiffs complete their audit of D.J. Springer, Inc.'s books and records; and the Court further

**ORDERS** that within **thirty (30) days** of the completion of the audit, Plaintiffs shall move for entry of judgment against Defendants for any and all contributions and deductions that are determined to be due as a result of the audit, plus the applicable interest thereon, liquidated damages, audit costs, and attorneys' fees and costs; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 17, 2018
      Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge